# EXHIBIT A

**ANDERSON KILL P.C.**
Steven J. Pudell, Esq. (Bar No.: 040951995)
One Gateway Center, Suite 1500
Newark, New Jersey 07102
973-642-5858
*Attorneys for Plaintiffs*

|  |  |
|---|---|
| ADVANCE AT HARRISON, LLC; and BLOCK D PARTNERS URBAN RENEWAL I, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> GREENWICH INSURANCE COMPANY <br> and AXA XL INSURANCE COMPANY, <br><br> Defendants. | **SUPERIOR COURT OF NEW JERSEY LAW DIVISION: HUDSON COUNTY** <br><br> CIVIL ACTION <br><br> DOCKET NO.: <br><br><br> **COMPLAINT AND JURY DEMAND** |

Plaintiffs Advance at Harrison, LLC ("AH") and Block D Partners Urban Renewal I, LLC ("Block D Partners") (collectively, "Plaintiffs"), by way of their complaint against Defendants Greenwich Insurance Company ("Greenwich") and AXA XL Insurance Company ("AXA XL") (collectively, "Defendants"), allege the following:

## THE NATURE OF THE ACTION

1.     This is an insurance coverage action regarding insurance coverage for losses, including remediation costs, suffered by Plaintiffs resulting from pollutants detected in soil (the "Pollution Condition") on Block D Partners' property, which conditions required off-site disposal.

2.     Block D Partners' property is located at 1100 S 5th Street (A.K.A. Parcel D/ Block 138.04, Lot 1), Harrison, NJ 07029 (the "Property").

3.     Block D Partners contracted with other parties with respect to the construction of a five-story multi-family/retail development (the "Construction Project") on the Property.

4.      In the course of geotechnical site preparation for the Construction Project, entities other than Plaintiffs brought soil containing the Pollution Condition onto the Property.

5.      Upon discovery of the Pollution Condition, Plaintiffs were required by law to remediate the Pollution Condition from the Property, which has cost Plaintiffs approximately $1,500,000.

6.      This action arises out of a dispute between Plaintiffs and Defendants regarding the insurance coverage provided by a Greenwich Pollution and Remediation Legal Liability Policy that Greenwich, via AXA XL, sold to Plaintiffs.

7.      Plaintiffs are forced to bring this litigation as a result of Greenwich's refusal to honor, and breach of, its contractual obligations set forth in the insurance policy it sold to Plaintiffs.

8.      Plaintiffs bring this action against Defendants for damages for breach of contract, as well as any other damages recoverable by law.

## THE PARTIES

9.      Plaintiff AH is a New Jersey limited liability company with its principal place of business at 1430 U.S. Highway 206, Bedminster, New Jersey 07921. All members are citizens of New Jersey.

10.      Plaintiff Block D Partners is a New Jersey limited liability company with its principal place of business at 1430 U.S. Highway 206, Bedminster, New Jersey 07921. All members are citizens of New Jersey.

11.      Upon information and belief, Defendant Greenwich Insurance Company is an insurance company organized under the laws of the State of Delaware, with its principal place of business at 70 Seaview Avenue, Stamford, CT 06902.

12. Upon information and belief, Defendant AXA XL Insurance Company is an insurance company organized under the laws of the State of Delaware, with its principal place of business at 677 Washington Boulevard, 10th Floor, Suite 1000, Stamford, Connecticut 06901.

## JURISDICTION AND VENUE

13. This Court has personal jurisdiction over Defendants because they regularly conduct the business of insurance in New Jersey and in the County of Hudson.

14. Venue is proper in the County of Hudson pursuant to R. 4:3-2 because that is the county in which the cause of action arose, and it is where Defendants conducted business for purposes of this dispute pursuant to R. 4:3-2(b).

## FACTUAL BACKGROUND

15. In 2016, non-party DeBartolo Construction Services, LLC ("DeBartolo") – the construction contractor then attached to the Construction Project – began preparations for the previously-approved Construction Project on the Property.

16. Between April and June 2016, DeBartolo imported material to the Property as "surcharge."

17. "Surcharge" is comprised of dirt, or similarly weighty materials, such as sand, stone, or gravel.

18. Surcharge can be used to prepare soil to support buildings prior to construction.

19. Here, the purpose of the placement of surcharge was to facilitate geotechnical preparation of the Property for the commencement of construction thereon.

20. Upon information and belief, DeBartolo procured the surcharge material from Impact Reuse and Recovery Center, a company located at 1000 Page Ave, Lyndhurst, NJ 07030.

21.     All applicable laws and regulations were followed in connection with importation and management of the surcharge material, including oversight by a New Jersey Licensed Site Remediation Professional ("LSRP").

22.     In 2021, following completion of active remediation of the Property, which was completed in the 2000s, the geotechnical function performed by the surcharge was also achieved, and further preparation for physical redevelopment of the site commenced.

23.     At that time, the LSRP with ongoing regulatory authority over the Property (an employee of SESI Consulting with a PhD in environmental engineering), recommended and implemented testing of the surcharge for the presence of contaminants. In the course of that testing, the LSRP identified a potential Pollution Condition in the surcharge placed on the Property in 2016.

24.     In late May 2021, the LSRP notified Block D Partners of the Pollution Condition and advised Block D Partners of the requirement, pursuant to New Jersey law, to dispose the surcharge as contaminated waste.

25.     Shortly after discovering that the surcharge was required to be disposed of, AH provided notice to Greenwich.

26.     Block D Partners entered into written agreements with Clean Earth of King of Prussia, Petillo Excavating, the LSRP and SESI, and three licensed disposal locations in New Jersey to begin the remediation of the Pollution Condition from the Property, namely, the characterization, removal, and disposal of the surcharge (hereinafter, the "Remediation").

27.     The Remediation began in late May 2021 and continued through July 2021.

28.     To date, Plaintiffs have accrued approximately $1,500,000 in costs associated with the Remediation and other related fees.

29.     All costs incurred by Plaintiffs in connection with the Remediation are reasonable and necessary and do not constitute voluntary payments.

30.     Any costs incurred by Plaintiffs in connection with the Remediation prior to Plaintiffs giving formal notice of the Remediation to Greenwich and/or AXA XL were reasonable and necessary. These costs would have been required to have been incurred regardless of the timing of the notice or Greenwich/AXA XL's involvement.

31.     The nature of the Remediation required immediate action.

32.     Plaintiffs complied with all their obligations under the Policy.

## The Greenwich Policy

33.     AXA XL sold a Greenwich primary-level Pollution and Remediation Legal Liability Policy to First Named Insured AH, bearing policy number PEC004707201 with a policy period of December 15, 2020 until December 15, 2023 (the "Policy").

34.     The Policy is a "claims-made and reported" policy, requiring that a Claim be first made and reported to Greenwich, in writing, during the Policy Period, or, where applicable, the Extended Reporting Period.

35.     The Insuring Agreement provides that the Policy contains "Your Location Coverage," providing that Greenwich will pay for:

> **Pollution Loss**, as a result of a **Pollution Condition** on, at, under or migrating from **Your Location** that first commenced on or after the **Retroactive Date** […] provided that […] (2) the **Pollution Condition** is first discovered by you during the **Policy Period** and reported to us, in writing, during the **Policy Period**[...]

36.     The Policy provides that the words "you" and "your" mean the Insured, and Insured is a defined term in the Policy which includes, but is not limited to, First Named Insured and Additional Named Insured.

5

37.    The Your Location Coverage contains a $5,000,000 liability limit per Pollution Condition, subject to a $10,000,000 aggregate limit and a $100,000 Self-Insured Retention per Pollution Condition.

38.    Endorsement #001 of the Policy adds the Property as Your Location(s) 003.

39.    Endorsement #006 of the Policy also contains an Additional Named Insured Schedule, which lists, among others, Block D Partners Urban Renewal I, LLC as "Additional Named Insured" under the Policy.

40.    "Pollutants," as defined under the Policy, mean "any solid, liquid, gaseous or thermal irritant, contaminant or hazardous substance, including but not limited to, acids, alkalis, electromagnetic fields, fumes, bacteria, **Low-Level Radioactive Waste and Material**, **Mold Matter**, odors, smoke, soot, toxic chemicals, vapors and waste materials, including medical, infectious, and pathological wastes."

41.    "Pollution Condition," as defined under the Policy means, in relevant part:

the illicit abandonment of **Pollutants** […] in or under the soil or any watercourse or body of water including groundwater, or inside a building leased by you to a tenant, on, at or under **Your Location**, by anyone other than you, provided that you are without knowledge of the use and/or presence of such **Pollutants**[…]

42.    "Pollution Loss", as defined under the Policy means, in relevant part:

"each of the following that results from a **Pollution Condition** that first commenced on or after the **Retroactive Date** stated in Item (4) of the **Declarations**, if applicable […] (2) with regard to SECTION I – INSURING AGREEMENTS, A. Your Location Coverage […] **Remediation Expense** that is incurred with our prior written consent (such consent shall not be unreasonably withheld)."

43.    "Remediation Expense" means, in relevant part,

reasonable and necessary expenses caused by a **Pollution Condition** and incurred to investigate, assess, remove, dispose of, treat, abate, contain or neutralize a **Pollution Condition**, including any associated monitoring and testing costs, to the extent required by: (1) Federal, State, Local or Provincial Laws, Regulations or Statutes […] (3) the written opinion of a New Jersey Licensed Site Remediation Professional (NJLSRP), retained by the **First Named** Insured, duly acting pursuant

to the Site Remediation Reform Act […] Remediation **Expense** shall also include **Legal Expense** associated with Subsections AA.1., AA.2., and AA.3. referenced immediately above […]

44.     Plaintiffs have suffered a Pollution Loss and Remediation Expense covered under the Policy.

### **Plaintiffs' Compliance with Policy Conditions**

45.     To the extent that the Policy imposes duties upon Plaintiffs, Plaintiffs have complied with the same.

46.     Plaintiffs provided timely and proper notice of discovery of Pollution Loss under the Policy to Defendants.

47.     Following notice the insurance companies lodged numerous requests for information about the Pollution Loss.

48.     All of the requests referenced in the preceding paragraph have been responded to, to the best of Plaintiffs' knowledge and in a timely fashion.

49.     Defendants have never disputed that Plaintiffs provided notice to Defendants as soon as practicable.

50.     Greenwich did not suffer any appreciable prejudice by receiving notice on June 18, 2021.

51.     All conditions precedent to Defendants providing coverage to Plaintiffs for the expenses have been met.

52.     No exclusions apply to preclude or otherwise limit the coverage that Defendants are obligated to provide to Plaintiffs.

53.     The purported Historic Fill Material Exclusion for Specific Your Location(s) does not apply to the surcharge, which falls outside the definition of Historic Fill Material thereunder.

54.     Defendants are obligated to provide coverage to Plaintiffs and pay any amounts that Plaintiffs incur or are otherwise required to pay for Pollution Loss as a result of the Pollution Condition.

## **Defendants' Wrongful Denial of Coverage**

55.     No later than on June 18, 2021, only 16 business days after Plaintiffs became aware of the Pollution Condition requiring removal of the soil from their property, Kore Insurance ("Kore"), Plaintiffs' insurance broker, notified Defendants of the loss and requested insurance coverage under the Policy.[1]

56.     Greenwich did not suffer any appreciable prejudice by receiving notice on June 18, 2021.

57.     Two months later, on August 18, 2021, in a letter from a Sr. Claims Consultant, Environmental Claims, AXA XL denied Plaintiffs' Claim on various grounds.[2]

58.     On November 10, 2021, Anthony Guzman, Director of Claims Management & Solutions at Kore, sent an email to AXA XL disputing the basis for Defendants' coverage denial and requesting reconsideration of the denial of the claim.[3]

---

[1]     A true and correct copy of the "Notification of Loss" dated June 18, 2021 is annexed hereto as **Exhibit A**.

[2]     A true and correct copy of AXA XL's "Denial Letter" dated August 18, 2021 is annexed hereto as **Exhibit B.**

[3]     A true and correct copy of the email from Anthony Guzman of Kore to Ms. Sugg of AXA XL, dated November 10, 2021, is annexed hereto as **Exhibit C**.

59.    Over five- and one-half months later, on May 6, 2022, AXA XL responded, sending an email to Plaintiffs' legal counsel – Windels Marx Lane & Mittendorf, LLP – seeking additional information regarding the claim, purportedly so that Defendants could assess the claim.[4]

60.    The Plaintiffs supplied all information requested by AXA XL.

61.    Further months later, on November 2, 2022, AXA XL sent an email to Kore, indicating that AXA XL was maintaining its position denying coverage.[5]

62.    To date, Defendants continue to at least in part deny Plaintiffs' insurance claim and dispute the damages set forth by Plaintiffs, despite the fact that Plaintiffs' insurance claim falls squarely within the Policy's coverage.

## COUNT I (BREACH OF CONTRACT)

63.    Plaintiffs repeat and re-allege the allegations in Paragraphs 1 through 62 as though fully set forth herein.

64.    The Policy constitutes a valid and enforceable contract between Plaintiffs and Defendants.

65.    Plaintiffs have complied with all conditions of coverage, including the payment of all insurance premiums due under the Policy, and satisfied all obligations to the extent that they have not been waived or abrogated by Defendants' conduct, omissions, or actions.

66.    All insurance premiums due under the Policy have been paid.

67.    Plaintiffs' losses resulted from Pollution Loss as a result of a Pollution Condition arising on a covered location under the Policy.

---

[4]    A true and correct copy of the email from Ms. Sugg to Windels Marx Lane & Mittendorf LLP, dated May 6, 2022, is annexed hereto as **Exhibit D**.

[5]    A true and correct copy of the email sent by Ms. Sugg of AXA XL to Shawn Corrigan and Anthony Guzman, who are both employees of Kore, dated November 2, 2022, is annexed hereto as **Exhibit E**.

68.     Plaintiffs' Claim is not excluded under the Policy.  Specifically, the purported Historic Fill Material Exclusion for Specific Your Location(s) does not apply to the surcharge, which falls outside the definition of Historic Fill Material thereunder.

69.     Under the Policy, Defendants have a contractual duty to cover Plaintiffs in full for the losses sought in Plaintiffs' Claim.

70.     Defendants have breached their contractual obligations under the Policy by failing and refusing to provide coverage to Plaintiffs, and failing to pay the full amount of Plaintiffs' covered losses.

71.     As a direct and proximate result of Defendants' breach of their obligations under the Policy, Plaintiffs have suffered and continue to suffer substantial damages, including but not limited to compensatory damages, direct and consequential damages, pre- and post-judgment interest, attorneys' fees, and costs, in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

(a)     Enter judgment in favor of Plaintiffs and against Defendants for actual and consequential damages for breach of contract in an amount to be determined at trial; and

(b)     Award attorneys' fees pursuant to New Jersey law and Court Rules, including but not limited to R. 4:42-9, costs, pre-judgment and post-judgment interest, compensatory damages, special, direct and consequential damages in an amount to be proven at trial, and all additional relief the Court deems just and appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all counts so triable.


Dated:    November 10, 2025

By:   */s/ Steven Pudell*
Steven J. Pudell, Esq.
ANDERSON KILL P.C.
One Gateway Center, Suite 1500
Newark, NJ 07102
Telephone:  973.642.5858

*Attorneys for Plaintiffs*
*Advance at Harrison LLC*
*Block D Partners Urban Renewal I, LLC*

## DESIGNATION OF TRIAL COUNSEL

Please take notice that pursuant to R. 4:25-4, Steven J. Pudell, Esq. is herewith designated as trial counsel for Plaintiffs.

## RULE 4:5-1 CERTIFICATION

I hereby certify, pursuant to R. 4:5-1, that to the best of my knowledge, information and belief the matter in controversy is not the subject matter of any other action pending in any other court, nor of any pending arbitration proceeding, and no other action or arbitration is contemplated; further there are no other parties who should be joined in this action.

## CERTIFICATION PURSUANT TO RULE 1:38-7

I certify that confidential personal identifiers have been redacted, to the extent relevant, from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

Dated:    November 10, 2025

By:   */s/ Steven Pudell*
       Steven J. Pudell, Esq.
       ANDERSON KILL P.C.
       One Gateway Center, Suite 1500
       Newark, NJ 07102
       Telephone:  973.642.5858

       *Attorneys for Plaintiffs*
       *Advance at Harrison LLC*
       *Block D Partners Urban Renewal I, LLC*

# EXHIBIT A

**SCORRIGAN**

# ACORD

## GENERAL LIABILITY NOTICE OF OCCURRENCE / CLAIM

| | DATE (MM/DD/YYYY) |
|---|---|
| | 6/18/2021 |

| AGENCY | INSURED LOCATION CODE | DATE OF LOSS AND TIME | | AM |
|---|---|---|---|---|
| **Kore Insurance Holdings, LLC** P.O. Box 473 354 Eisenhower Parkway, Plaza 1 Livingston, NJ 07039 | | 04/01/2016 | | PM |

| CARRIER | | NAIC CODE |
|---|---|---|
| **Indian Harbor Insurance Company** | | **36940** |

| POLICY NUMBER |
|---|
| **PEC0047071** |

| CONTACT NAME: | |
|---|---|
| PHONE (A/C, No, Ext): | **(973) 994-3131** |
| FAX (A/C, No): | **(973) 996-3161** |
| E-MAIL ADDRESS: | **renee@koreins.com** |
| CODE: | SUBCODE: |
| AGENCY CUSTOMER ID: | **ADVAREA-02** |

### INSURED

| NAME OF INSURED (First, Middle, Last) | INSURED'S MAILING ADDRESS |
|---|---|
| **Advance Realty** | **1420 US Highway 206 STE 200** **Bedminster, NJ 07921** |

| DATE OF BIRTH | FEIN (if applicable) | |
|---|---|---|
| PRIMARY PHONE # | ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL |

PRIMARY E-MAIL ADDRESS: **joet@advancere.com**

SECONDARY E-MAIL ADDRESS:

### CONTACT ☐ CONTACT INSURED

| NAME OF CONTACT (First, Middle, Last) | CONTACT'S MAILING ADDRESS |
|---|---|
| **Richard Crooker Esq** | |
| PRIMARY PHONE # ☐ HOME ☒ BUS ☐ CELL **(908) 254-3126** | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL |
| WHEN TO CONTACT | PRIMARY E-MAIL ADDRESS: **richc@advancere.com** |
| | SECONDARY E-MAIL ADDRESS: |

### OCCURRENCE

| LOCATION OF OCCURRENCE | POLICE OR FIRE DEPARTMENT CONTACTED |
|---|---|
| STREET: | |
| CITY, STATE, ZIP: | REPORT NUMBER |
| COUNTRY: | |

DESCRIBE LOCATION OF OCCURRENCE IF NOT AT SPECIFIC STREET ADDRESS:

DESCRIPTION OF OCCURRENCE (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
**Pollution and Remediation Legal Liability.  Additional Named Insured Block D Partners Urban Renewal I LLC advised of a pollution condition regarding off-site disposal of soils.**

### TYPE OF LIABILITY

| PREMISES: INSURED IS | ☐ OWNER | ☐ TENANT | | TYPE OF PREMISES |
|---|---|---|---|---|
| OWNER'S NAME & ADDRESS (If not insured) | | | | |
| | | | | PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL   SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL |
| | | | | PRIMARY E-MAIL ADDRESS: |
| | | | | SECONDARY E-MAIL ADDRESS: |

| PRODUCTS: INSURED IS | ☐ MANUFACTURER | ☐ VENDOR | | TYPE OF PRODUCT |
|---|---|---|---|---|
| MANUFACTURER'S NAME & ADDRESS (If not insured) | | | | |
| | | | | PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL   SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL |
| | | | | PRIMARY E-MAIL ADDRESS: |
| | | | | SECONDARY E-MAIL ADDRESS: |
| WHERE CAN PRODUCT BE SEEN? | | | | |

**AGENCY CUSTOMER ID: ADVAREA-02**                                              **SCORRIGAN**

## INJURED / PROPERTY DAMAGED

| NAME & ADDRESS (Injured/Owner) | EMPLOYER'S NAME & ADDRESS |
|---|---|

| PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL | PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|---|

| PRIMARY E-MAIL ADDRESS: | PRIMARY E-MAIL ADDRESS: |
|---|---|
| SECONDARY E-MAIL ADDRESS: | SECONDARY E-MAIL ADDRESS: |

| AGE | SEX | OCCUPATION | DESCRIBE INJURY |
|---|---|---|---|

| WHERE TAKEN | WHAT WAS INJURED DOING? |
|---|---|

| DESCRIBE PROPERTY (Type, model, etc.) | ESTIMATE AMOUNT | WHERE CAN PROPERTY BE SEEN? |
|---|---|---|

## WITNESSES

| NAME AND ADDRESS | PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL |
|---|---|---|
| | PRIMARY E-MAIL ADDRESS: | |
| | SECONDARY E-MAIL ADDRESS: | |
| NAME AND ADDRESS | PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL |
| | PRIMARY E-MAIL ADDRESS: | |
| | SECONDARY E-MAIL ADDRESS: | |
| NAME AND ADDRESS | PRIMARY PHONE # ☐ HOME ☐ BUS ☐ CELL | SECONDARY PHONE # ☐ HOME ☐ BUS ☐ CELL |
| | PRIMARY E-MAIL ADDRESS: | |
| | SECONDARY E-MAIL ADDRESS: | |

## REMARKS (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| REPORTED BY | REPORTED TO |
|---|---|
| **Advance at Harrison, LLC** | **Shawn Corrigan** |

**ACORD 3 (2013/01)**                                    **Page 2 of 4**

AGENCY CUSTOMER ID: ADVAREA-02                                    SCORRIGAN

### APPLICABLE IN ALABAMA

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### APPLICABLE IN ALASKA

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

### APPLICABLE IN ARIZONA

For your protection, Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### APPLICABLE IN ARKANSAS, DELAWARE, KENTUCKY, LOUISIANA, MAINE, MICHIGAN, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH DAKOTA, PENNSYLVANIA, RHODE ISLAND, SOUTH DAKOTA, TENNESSEE, TEXAS, VIRGINIA, AND WEST VIRGINIA

Any person who knowingly and with intent to defraud any insurance company or another person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and [NY: substantial] civil penalties. In LA, ME, TN, and VA, insurance benefits may also be denied.

### APPLICABLE IN CALIFORNIA

For your protection, California law requires the following to appear on this form:   Any person who knowingly presents a false or fraudulent claim for payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### APPLICABLE IN COLORADO

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

### APPLICABLE IN THE DISTRICT OF COLUMBIA

Warning:   It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person.   Penalties include imprisonment and/or fines.   In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

### APPLICABLE IN FLORIDA

Pursuant to S. 817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost or repair of damaged property in support of a claim under an insurance policy knowing that the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information concerning any fact or thing material to the claim commits a felony of the third degree, punishable as provided in S. 775.082, S. 775.083, or S. 775.084, Florida Statutes.

### APPLICABLE IN HAWAII

For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

### APPLICABLE IN IDAHO

Any person who knowingly and with the intent to injure, defraud, or deceive any insurance company files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### APPLICABLE IN INDIANA

A person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

AGENCY CUSTOMER ID: **ADVAREA-02**                                     **SCORRIGAN**

### APPLICABLE IN KANSAS

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

### APPLICABLE IN MARYLAND

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### APPLICABLE IN MINNESOTA

A person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### APPLICABLE IN NEVADA

Pursuant to NRS 686A.291, any person who knowingly and willfully files a statement of claim that contains any false, incomplete or misleading information concerning a material fact is guilty of a felony.

### APPLICABLE IN NEW HAMPSHIRE

Any person who, with purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### APPLICABLE IN OHIO

Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

### APPLICABLE IN OKLAHOMA

WARNING: Any person who knowingly and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

### APPLICABLE IN WASHINGTON

It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.





**Date:**     June 18, 2021

**To:**       XL Insurance – First Reports
              napropcasclaimnewnotices@xlgroup.com

**From:**     Shawn Corrigan
              Senior Claims Specialist
              Kore Insurance
              (Direct) 973-949-1557
              (Email) scorrigan@koreins.com

t. 973.994.3131 | f. 973.996.3161 | www.koreins.com
354 Eisenhower Parkway, Plaza 1 Livingston, NJ 07039



## NOTIFICATION OF LOSS

**Insured:**                   Advance at Harrison, LLC
**Date of Loss:**              April – June of 2016
**Type of Loss:**              PLL
**Term & Policy Numbers:**     12/15/20 – 12/15/23   PEC004707201
                               12/15/15 – 12/15/25   PEC 0047071

t. 973.994.3131  |  f. 973.996.3161  |  www.koreins.com
354 Eisenhower Parkway, Plaza 1 Livingston, NJ 07039



Dear Sir/Madame:

This will set forth the facts of a newly discovered pollution condition and related loss for off-site disposal of soils from property owned by additional named insured, Block D Partners Urban Renewal I LLC ("Block D Partners").

XL issued two Pollution and Remediation Legal Liability policies covering Block D Partners and its affiliates, PEC 0047071 and PEC 004707201.  Between April and June 2016, fill material was placed on the insured property owned by Block D Partners as "surcharge".  The use of surcharge was to facilitate geotechnical preparation of the location for commencement of the approved multifamily and related construction.  The source of the fill material was a construction contractor that engaged a recycler to secure the material.  The insured has learned that the recycler source was a company called Impact Reuse and Recovery Center, 1000 Page Ave, Lyndhurst, NJ 07030.  The insured has further advised that all applicable rules were followed in connection with importation and management of the material, including oversight by licensed NJ LSRP, and that process was documented.

The insured has advised that construction at Block D is scheduled to commence in July 2021.  In preparing for preliminary site work to begin in June 2021, the insured discovered that pollution conditions in the surcharge fill would require action.  Specifically, the LSRP has determined and advised Block D Partners that those conditions require that most of the surcharge fill material must be disposed of and will not be reused in the redevelopment or conveyed to third parties as clean material.  Accordingly, the insured engaged Clean Earth of King of Prussia, PA 19406 along with the LSRP, Fuad Dahan, LSRP of SESI (environmental consulting firm) to implement characterization, removal and disposal of the material.  That process is now underway pursuant to agreements between the insured, a site contractor, Clean Earth and three licensed disposal locations located, respectively in the New Jersey municipalities of Bound Brook, Ridgefield and Carteret.   The insured has entered written contracts documenting all of the above.  Work recently commenced and is underway.

The insured requests that all required notices be provided to the insurer, confirmation that any loss incurred in connection with the pollution condition is covered under the subject policies and that any future losses arising from disposal at the non-owned locations will be subject to coverage.  The insured is amenable to providing any further information the insurer reasonably needs regarding this matter.

Thank you for your assistance in this matter.

t. 973.994.3131 | f. 973.996.3161 | www.koreins.com
354 Eisenhower Parkway, Plaza 1 Livingston, NJ 07039

# EXHIBIT B



AXA XL, a division of AXA
Environmental - Americas
505 Eagleview Blvd., Ste. 100
Exton, PA 19341
Donna Sugg, Senior Claim Specialist
Donna.Sugg@axaxl.com
dd:  610.968.2356

**VIA E-MAIL ONLY**
**Delivery & Read Receipt Requested**                    **DECLINATION OF COVERAGE**

August 18, 2021

Advance at Harrison LLC
c/o Advance Realty
Attn: Richard Crooker. General Counsel
1041 US Highway 202/206
Bridgewater, NJ 08807
Via E-mail to richc@advancere.com

| | | |
|---|---|---|
| Re: | Insured: | Advance at Harrison LLC |
| | Issuing Company: | Greenwich Insurance Co.; Indian Harbor Insurance Co. |
| | Policy Nos.: | PEC0047072; PEC0047071 |
| | Policy Period: | 12/15/2020 to 12/15/2023; 12/15/2015 to 12/15/2025 |
| | File Nos.: | 6821666; 6821704 |

Dear Mr. Crooker,

This office of AXA XL has been assigned on behalf of Greenwich Insurance Company ("Greenwich") and Indian Harbor Insurance Company ("IHIC") to review the above-captioned loss submitted by your broker, Kore Insurance, on behalf of Advance at Harrison LLC ("Harrison") and additional named insured, Block D Partners Urban Renewal I LLC ("Block D Partners") on June 18, 2021, for our review.  Greenwich and IHIC regretfully advise that coverage is not afforded for the loss submitted, as set forth more fully below.

We understand that this loss arises from disposal of contaminated soils discovered in or about April, 2021 at the property: Parcel D, Block 138.04, Lot 1, Harrison, NJ 07029 ("the Site").  Your Licensed Site Remediation Professional ("LSRP"), Fuad Dahan of SESI, identified pollution conditions in surcharge fill materials which purportedly required offsite disposal at facilities permitted to accept same.  Such disposal commenced in May, 2021 and continued through

Richard Crooker
August 18, 2021
Page 1




July, 2021 under the direction of SESI, as implemented by vendors Clean Earth and Petillo Excavating.

We further understand that the fill material that now requires offsite disposal was placed on the Site as surcharge between April 2016 and June 2016 to facilitate geotechnical preparation of the location for commencement of approved multifamily and related construction.

If the above summary is inaccurate or materially incomplete, please advise and provide us with any additional information for review.

As you are aware, Greenwich issued a Pollution and Remediation Legal Liability policy number PEC0047072 ("Policy One") to Harrison for the policy period December 15, 2020 to December 15, 2023.  Policy One provides a Policy Aggregate limit of $10,000,000 and a Your Location Coverage Limit of $5,000,000 for each Pollution Condition and $10,000,000 Your Location Aggregate, subject to a $100,000 Self-Insured Retention for each Pollution Condition and a Retroactive Date of December 15, 2015.  Policy One lists Your Location 003 as:

> PARCEL BOUNDED BY S. 5THSTREET, PET HIGGINS BOULEVARD, RIVERBEND STREET AND CRUCIBLE STREET (A.K.A. PARCEL D/ BLOCK 138.04, LOT 1), HARRISON, NJ 07029

Preliminarily, we note the facts of this matter do not implicate coverage under Policy One's Coverage B. Emergency Remediation Expense, Coverage C. Contingent Transportation and Coverage D. Non-Owned Disposal Site Coverage, and those coverages are therefore not further addressed in this letter.

Your policy provides in **SECTION I. INSURING AGREEMENTS:**

    **A.**    <u>**Your Location Coverage**</u>

        We will pay on your behalf for **Pollution Loss**, as a result of a **Pollution Condition** on, at, under or migrating from **Your Location** that first commenced on or after the **Retroactive Date**, if applicable, and first commenced prior to the **Reverse Retroactive Date**, if applicable, provided that:

        **1.**    (i) the **Pollution Condition** results in a **Claim**; (ii) the **Claim** is for **Pollution Loss** that you become legally obligated to pay; and (iii) the **Claim** is first made during the **Policy Period** and reported to us, in writing, during the **Policy Period**, or, where applicable, the Extended Reporting Period; or

        **2.**    the **Pollution Condition** is first discovered by you during the **Policy Period** and reported to us, in writing, during the **Policy Period**, or, where applicable, the Extended Reporting Period.

Policy One provides, in **SECTION III. DEFINITIONS**, as amended by endorsement and in relevant part, the following definitions:

Richard Crooker
August 18, 2021
Page 2

 

**F.**   **Claim** means any written demand, notice, or assertion of a legal right, alleging liability or responsibility on your part, and includes, but is not limited to, a lawsuit, petition, order or government or regulatory action commenced against you.

<div align="center">*              *              *              *</div>

**M.**   **Legal Expense** means legal costs, charges and expenses incurred by you or on your behalf in the investigation or defense of a **Claim** for **Pollution Loss**, or in connection with **Remediation Expense**, and includes any necessary expert fees paid to experts retained by defense counsel.

**Legal Expense** does not include any of the following:

**1.**   time and expense incurred by you assisting us in the investigation or resolution of a **Claim** or in connection with **Remediation Expense**, including but not limited to, the costs of your in-house counsel, salary charges of your regular employees or officials, and fees and expenses of counsel retained by you;

**2.**   salary charges of our employees; or

**3.**   legal cost, charges and expenses incurred in connection with **Emergency Remediation Expense**

<div align="center">*              *              *              *</div>

**W.**   **Pollutants** mean any solid, liquid, gaseous or thermal irritant, contaminant or hazardous substance, including, but not limited to, acids, alkalis, electromagnetic fields, fumes, bacteria, Legionella, **Low-Level Radioactive Waste and Material**, **Mold Matter**, odors, smoke, soot, toxic chemicals, vapors and waste materials, including medical, infectious and pathological wastes.

**X.**   **Pollution Condition** means:

**1.**   the discharge, dispersal, release, seepage, migration, or escape of **Pollutants** into or upon land, or structures thereupon, the atmosphere, or any watercourse or body of water including groundwater; the continued discharge, dispersal, release, seepage, migration or escape of such **Pollutants** comprises a single **Pollution Condition**;

**2.**   the presence of any uncontrolled or uncontained **Pollutants** in land, the atmosphere, or any watercourse or body of water including groundwater;

**3.**   the illicit abandonment of **Pollutants**, or any drums, tanks or similar containers holding such **Pollutants**, in, on or under the soil or any watercourse or body of water including groundwater, or inside a building leased by you to a tenant, on, at or under **Your Location**, by anyone other than you, provided that you are without knowledge of the use and/or presence of such **Pollutants** or any drums, tanks or similar containers holding such **Pollutants**; and




**4.** the presence of **Mold Matter** in or on buildings or structures.

Except as to Subsection X.3. referenced above, a **Pollution Condition** shall not include the presence of **Pollutants** in any container or structure that holds or contains **Pollutants**.

**Y.** **Pollution Loss** means each of the following that results from a **Pollution Condition** that first commenced on or after the **Retroactive Date** stated in Item (4) of the Declarations, if applicable, or first commenced prior to the **Reverse Retroactive Date** stated in Item (4) of the Declarations, if applicable:

**1.** monetary judgment, or settlement that is entered into with our prior written consent (such consent shall not be unreasonably withheld), of compensatory damages for:

  a. **Bodily Injury** or **Property Damage**; or

  b. **Remediation Expense**;

**2.** with regard to **SECTION I – INSURING AGREEMENTS**, A. <u>Your Location Coverage</u> and C. <u>Contingent Transportation Coverage</u>, **Remediation Expense** that is incurred with our prior written consent (such consent shall not be unreasonably withheld);

**3.** civil fines and penalties assessed against you, but only where insurance coverage for such fines and penalties is allowable by law;

**4.** punitive, exemplary or multiplied damages that you are legally liable for, but only where insurance coverage for such damages is allowable by law; or

**5.** **Legal Expense** associated with Subsections Y.1. through Y.4. referenced immediately above, that is incurred with our prior written consent (such consent shall not be unreasonably withheld).

**Pollution Loss** does not include:

  a. injunctive or equitable relief;

  b. the return of fees or charges, or services rendered;

  c. salaries of your employees or any Leased Worker; or

  d. your profit, overhead or mark-up.

  \*                    \*                    \*

**AA.** **Remediation Expense** means reasonable and necessary expenses caused by a **Pollution Condition** and incurred to investigate, assess, remove, dispose of, treat,




contain or neutralize a **Pollution Condition**, including any associated monitoring and testing costs, to the extent required by:

1.      Federal, State, Local or Provincial Laws, Regulations or Statutes, or any subsequent amendments thereof, or **Mold Matter Remediation Standards**, enacted to address a **Pollution Condition**, including any individual or entity acting under the authority thereof; or

2.      a legally executed State voluntary program governing the clean-up of a **Pollution Condition**; or

3.      the written opinion of a New Jersey Licensed Site Remediation Professional (NJLSRP), retained by the **First Named Insured**, duly acting pursuant to the Site Remediation Reform Act enacted on May 7, 2009 and codified at N.J.S.A. 58:10C-1 et seq. and any relevant regulations subsequently promulgated by the New Jersey Department of Environmental Protection (NJDEP).

**Remediation Expense** shall also include **Legal Expense** associated with Subsections AA.1., AA.2. and AA.3. referenced immediately above and **Restoration Costs**.

**Remediation Expense** does not include any capital improvements.

As amended by Endorsement #024, **SECTION III – DEFINITIONS** is amended to include:

**Historic Fill Material** means any non-indigenous or non-native material, historically deposited on, at or under **Your Location** to create useable land, which is in no way connected or associated with the subsequent operations on or at **Your Location**. **Historic Fill Material** can also be solid waste including, but not limited to, coal ash, wood ash, municipal solid waste incinerator ash, construction and demolition debris, dredged sediments, railroad ballast, refuse and land clearing debris.

We further refer you to the following Exclusion outlined in Policy One, **SECTION IV - EXCLUSIONS**, as amended by Endorsement # 024**,**

This Policy does not apply to any **Claim**, **Pollution Loss**, **Emergency Remediation Expense**, or any other coverage afforded under this Policy, including SECTION II – SUPPLEMENTAL COVERAGES, directly or indirectly based upon or arising out of:

**Historic Fill Material**
any costs associated with or related to the excavation, handling, loading/unloading, testing, transportation or disposal of any **Historic Fill Material** where such **Historic Fill Material** is located on, at or under **Your Location(s)**.

This exclusion does not apply to any **Bodily Injury**, **Property Damage** or **Legal Expense** associated with **Bodily Injury** or **Property Damage**.





You have submitted the costs of soil excavation, testing and disposal, for contaminated soil consisting of the surcharge, which is **Historic Fill Material** as defined by Policy One. Accordingly, coverage is not afforded for this matter pursuant to Policy One in accordance with the above-cited Exclusion.

Further, even if coverage were afforded by Policy One, to the extent that **Remediation Expense** was incurred without our prior written consent, such costs would be precluded from coverage.

We further understand that IHIC issued a Pollution and Remediation Legal Liability Policy PEC0047071 ("Policy Two") to Harrison for the policy period December 15, 2015 to December 15, 2025.  Policy Two provides a Limit of $5,000,000 each Pollution Condition and $10,000,000 in the aggregate, subject to a $100,000 Self-Insured Retention each Pollution Condition and a Reverse Retroactive Date of December 15, 2015.  The Site is a Covered Location on Policy Two.

Preliminarily, we note the facts of this matter do not implicate coverage under Policy Two's Coverage A. POLLUTION LEGAL LIABILITY or Coverage C. CONTINGENT TRANSPORTATION and those coverages are therefore not further addressed in this letter.

Policy Two provides in Section **I. INSURING AGREEMENT:**

      **B.**    <u>**Coverage B - REMEDIATION LEGAL LIABILITY**</u>

          The Company will pay on behalf of the INSURED for REMEDIATION EXPENSE and related LEGAL EXPENSE resulting from any POLLUTION CONDITION on, at, under or migrating from any COVERED LOCATION:

          1.    for a CLAIM first made against the INSURED during the POLICY PERIOD which the INSURED has or will become legally obligated to pay; or

          2.    that is first discovered during the POLICY PERIOD, provided that the INSURED reports such CLAIM or POLLUTION CONDITION to the Company, in writing, during the POLICY PERIOD or, where applicable, the EXTENDED REPORTING PERIOD.

The definitions in Policy Two are similar in relevant part to those cited with reference to Policy One.

We further refer you to Section **IV. EXCLUSIONS** of Policy Two, which provides in relevant part:

      **This Policy does not apply to LOSS, REMEDIATION EXPENSE, LEGAL EXPENSE or any other coverages afforded by endorsement attached to this Policy:**

      **16.**    **Reverse Retroactive Date**
          based upon or arising out of any POLLUTION CONDITION that commenced subsequent to the Reverse Retroactive Date stated in Item 6. of the Declarations.



The materials provided indicate that the POLLUTION CONDITION identified in the impacted surcharge fill soils commenced on or at the COVERED LOCATION when it was placed on the Site during April to June, 2016, subsequent to the **Reverse Retroactive Date** of December 15, 2015.  Accordingly, coverage is not afforded under this matter pursuant to Policy Two.

Even were coverage not barred by the reverse retroactive date on Policy Two, we note that endorsements on Policy Two may additionally limit or bar coverage for historic fill material and numerous listed constituents in or affecting soil, groundwater and surface water.

In the event that there are any other facts or circumstances which you believe may alter the positions of Greenwich and/or IHIC, kindly furnish this office with such documentation at your earliest convenience.  Please be advised that Greenwich and IHIC reserve any and all rights under any of the referenced policies, or any other policy issued by Greenwich and/or IHIC.  By identifying the bases for declining coverage for this claim, Greenwich and/or IHIC do not waive any other coverage defenses that may be available and expressly reserve(s) the right to raise additional coverage defenses.  Neither this letter nor any other act of Greenwich and/or IHIC and/or AXA XL shall change, waive, invalidate or forfeit any of the terms, conditions, definitions, exclusions or provisions in any of the policies issued by Greenwich and/or IHIC.

Should you have any questions concerning the above, please do not hesitate to contact us.

Regards,


Donna Sugg, CPCU, SCLA, AIC
Sr. Claims Consultant
Environmental Claims
AXA XL
610-968-2356
donna.sugg@axaxl.com


cc:     Kore Insurance
        Attn: Shawn Corrigan, Anthony Guzman and Allison Ammiano
        Via e-mail to scorrigan@koreins.com; aguzman@koreins.com; aammiano@koreins.com

        Beacon Hill Associates
        Attn: Stephen Holcombe and Carter McAuley
        Via e-mail to sholcombe@b-h-a.com; cmcauley@b-h-a.com

# EXHIBIT C

| | |
|---|---|
| **From:** | Anthony Guzman <aguzman@koreins.com> |
| **Sent:** | Wednesday, November 10, 2021 10:22 AM |
| **To:** | Sugg, Donna |
| **Cc:** | Richard Crooker, Esq.; Shawn Corrigan; Anthony Ferrara |
| **Subject:** | Request For Reconsideration of Denials Re: 6821666; 6821704 |

This message has originated from an **External Source**. Please use caution when opening attachments, clicking links, or responding to this email.

Hello Donna,

I hope you have been well.  Following up on our recent conversation, we discussed the fact that Kore and Advance Realty would like AXA to reconsider their denial of August 12, 2021.

In its declination, AXA relies on the exclusion for <u>historic fill</u> and in turn the definition of same (Endorsement #24) to decline the claim.  However, for this definition to apply to the surcharge that was placed on the Property it must have been placed "to create useable land, which is in no way connected or associated with the subsequent operations on or at Your Location."  This is not the case.  The surcharge that was placed on the Property is clearly connected with the subsequent operations on the Property. It was expressly placed to support and further the current (subsequent) operations. This applies equally were the phrase to be construed to apply to the "usable land" rather than the historic fill.

As such, we ask that you reconsider your position based on the information and clarification provided above and afford coverage for this matter.

My best,
Anthony

**Anthony Guzman**
**Director of Claims Management & Solutions**
**Kore Insurance**



d:  973.803.4482
c:  917-309-6568
e:  <u>aguzman@koreins.com</u>
w: <u>www.koreins.com</u>

# EXHIBIT D

| | |
|---|---|
| **From:** | Richard Crooker, Esq. <richc@advancere.com> |
| **Sent:** | Friday, May 6, 2022 5:00 PM |
| **To:** | Craig, Andrew |
| **Subject:** | FW: Follow-up re: Claim # 9915513 RE: Notice of new loss - Advance Realty (Advance at Harrison, Block D findings by APL) |

<div style="border: 1px solid red; color: red;">This message has originated from an **External Source**. Please use caution when opening attachments, clicking links, or responding to this email.</div>

**From:** Sugg, Donna <donna.sugg@axaxl.com>
**Sent:** Friday, May 6, 2022 4:38 PM
**To:** Richard Crooker, Esq. <richc@advancere.com>
**Cc:** 'Shawn Corrigan' <scorrigan@koreins.com>; 'Anthony Guzman' <aguzman@koreins.com>; 'Stevens Perodin' <sperodin@koreins.com>
**Subject:** Follow-up re: Claim # 9915513 RE: Notice of new loss - Advance Realty (Advance at Harrison, Block D findings by APL)

Confidential

Good afternoon, Mr. Crooker,

I am following up on the information request below. This matter was reported as a potential pollution claim at S. 5th St. and Riverbend Drive, Harrison, NJ and the loss report included an analytical report from Aqua Pro-Tech Laboratories dated 2/9/22 and addressed to SESI Consulting Engineers. However, there was no narrative to accompany the report and although the e-mail stream included a 2/9/22 message that Bayshore was to provide a proposal, no follow-up proposal was included in the submission.

Kindly provide the following so that we may conduct our review of coverage, liability and damages in this matter:

- SESI's summary of the analytical data to determine if any of the constituent levels exceed applicable regulatory criteria.

- SESI proposal, reports and invoicing for scopes of work completed to date.

- Figure showing the locations and depths of the soil samples, as well as SESI's opinion regarding the nature of the soil.

- Regulatory correspondence regarding any remediation expense for which you seek coverage.

- Estimated volume and Bayshore's proposal for soil disposal.

- Proposal for any additional investigation and/or remediation.

If there is additional material which your review indicates is relevant to the loss, please also include it in your response.

Please note that we are currently investigating this loss.  Your policy(ies) may limit or bar coverage for this claim.  We note that coverage on policy PEC0047071, on which this loss was reported, is subject to a reverse retroactive date of December 15, 2015, and that several endorsements on this policy restrict coverage for certain constituents and/or media at the Block D location, which appears to be the location referenced at address S. 5th St. and Riverbend Drive, Harrison, NJ.  Pending completion of our investigation, please be advised that IHIC and Greenwich reserve any and all rights they may have under the terms and conditions of the policies.  Neither this letter nor any other act of IHIC, Greenwich or AXA XL shall change, waive, invalidate or forfeit any of the terms, conditions, definitions, exclusions or provisions of any of the policies issued by IHIC and/or Greenwich.

We look forward to your response at your earliest convenience.  Thank you,

**Our goal is superior service. Every time.**
**Your feedback is very important to us.**
**Please click on this link to take our brief anonymous survey and tell us how we're doing.**

Sincerely,



**Donna Sugg, CPCU, SCLA, AIC**
Team Leader
Environmental - Americas
AXA XL

505 Eagleview Blvd, Suite 100
Exton, PA 19341
donna.sugg@axaxl.com

Direct:  610-968-2356
Mobile: 484-467-7666
Fax: 610-458-6653
www.axaxl.com







# EXHIBIT E

**From:** Sugg, Donna <donna.sugg@axaxl.com>
**Sent:** Wednesday, November 2, 2022 4:11 PM
**To:** Shawn Corrigan <scorrigan@koreins.com>; Anthony Guzman <aguzman@koreins.com>
**Cc:** McMahon, Bob <bob.mcmahon@axaxl.com>
**Subject:** Advance at Harrison 6821666

Confidential

Hi, Shawn and Anthony,

Thank you for your time this week to review this claim together. As we discussed, based on the information currently available, we are maintaining our position regarding coverage as set forth in our letter of August 26, 2021.

1

This will confirm we also discussed the documentation provided to date on the claim. Below, I am listing the cost submissions we received, which may not be complete. We note that some of these costs were incurred prior to tender of the claim to Greenwich on 6/18/21. and we understood the contaminated soil disposal was expected to continue into July, 2021. Also, we understood that the excavation and loading costs budgeted by Petillo were not caused by a pollution condition, since the construction plan called for the materials to be taken off the property. Lastly, we had not received clarification on on whether the Clean Earth Options specified below represented final costs or initial estimates. To date, we did not receive all supporting documentation, such as

- any additional SESI invoicing and supporting documentation,
- Petillo's estimate/invoicing showing the unit cost for transportation and disposal, noting any change in price for removal of clean versus impacted soil, and
- supporting documentation for the June 22 & 24/21 invoices from Clean Earth
- Petillo's initial estimate(s) and any Soil Management Plan

Again, we appreciated your time and look forward to your response regarding the disputed coverage position.

The materials currently on file are summarized below:

| Task Description | Proposal/CO Date | XL Approval | Task Budget | Invoice Number | Invoice Date | Invoice Amount | Comment |
|---|---|---|---|---|---|---|---|
| SESI Waste Characterization | NA | No | ? | 11496-04 | 5/28/21 | $49,279.85 | Waste char sampling, analytical, weekly team mtgs, coord with Langan & input on civil drawings, calls with client/broker, coord with lab and Clean Earth |
| Task Subtotal | | | | $0.00 | | $49,279.85 | |
| SESI $750/day, $400 1/2 day PM $6000 | 9/29/20 | No | | | | | |
| Task Subtotal | | | | $0.00 | | $0.00 | |

| **Petillo** | 5/25/21 | No | $229,195.00 | | | | |
| Excavate and load | | | | | | | |
| | | | | | | | |
| Task Subtotal | | | $229,195.00 | | | $0.00 | |
| **Clean Earth** | 5/24/21 | No | | 391397 | 6/4/21 | $74,905.00 | Soil T&D |
| | | | | | | | |
| Option 1 330 loads @ $360/ld - $118,800 | | | | 391686 | 6/8/21 | $18,460.00 | Soil T&D |
| Option 2: 1680 loads @ $355/ld = $596,400 | | | | 393154 | 6/22/21 | $109,695.00 | Soil T&D |
| Option 3: 1,275 tons @ $82/ton = $104,550 | | | | 393456 | 6/22/21 | $132,770.00 | Soil T&D |
| Or | | | | 393676 | 6/24/21 | $118,800.00 | Soil T&D |
| Option 3: 1,275 tons @ $52/ton = $66,300 | | | | | | | |
| and | | | | | | | |
| Option 3: 3,825 tons @ $47/ton = $179,775 | | | | | | | |
| Task Subtotal | | | $0.00 | | | $454,630.00 | |

| Project Total | | | $229,195.00 | | | $503,909.85 | |

**Our goal is superior service. Every time.**
**Your feedback is very important to us.**
**Please click on this link to take our brief anonymous survey and tell us how we're doing.**

Sincerely,



**Donna Sugg, CPCU, SCLA, AIC**
Team Leader
Environmental - Americas
AXA XL

505 Eagleview Blvd, Suite 100
Exton, PA 19341
donna.sugg@axaxl.com

Direct:  610-968-2356
Mobile: 484-467-7666
Fax: 610-458-6653
www.axaxl.com





You may unsubscribe from future promotional emails at any time by clicking unsubscribe. Changing your email preferences will not affect any non-promotional electronic correspondence you may receive from us in the ordinary course of business.

CONFIDENTIALITY: This communication, including attachments, is for the exclusive use of the addressee(s) and may contain proprietary, confidential or privileged information. If you are not the intended recipient, any use, copying, disclosure, or distribution or the taking of any action in reliance upon this information is strictly prohibited. If you are not the intended recipient, please notify the sender immediately and delete this communication and destroy all copies.

DATA PROTECTION: AXA XL is committed to compliance with applicable data protection laws. For further information on how we use your personal data, please see our privacy policy at https://axaxl.com/privacy-notice



New Jersey Judiciary
Civil Practice Division

# Civil Case Information Statement (CIS)

Use for initial Law Division Civil Part pleadings (not motions) under Rule 4:5-1.
Pleading will be rejected for filing, under Rule 1:5-6(c), if information above the
black bar is not completed, or attorney's signature is not affixed.

| For Use by Clerk's Office Only | | | | |
|---|---|---|---|---|
| Payment type ☐ check ☐ charge ☐ cash | Charge/Check Number | Amount $ | Overpayment $ | Batch Number |

| Attorney/Pro Se Name<br>Steven J. Pudell, Esq. | Telephone Number<br>(973) 642-5858   ext. | County of Venue<br>Hudson |
|---|---|---|

| Firm Name (if applicable)<br>Anderson Kill P.C. | Docket Number (when available) |
|---|---|

| Office Address - Street<br>One Gateway Center, Suite 1500 | City<br>Newark | State<br>NJ | Zip<br>07102 |
|---|---|---|---|

| Document Type<br>Complaint | Jury Demand   ■ Yes    ☐ No |
|---|---|

| Name of Party (e.g., John Doe, Plaintiff)<br>Advance at Harrison, LLC, et. al, Plaintiffs | Caption<br>Advance at Harrison, et. al. v. Greenwich Ins. Co. et al |
|---|---|

Case Type Number (See page 3 for listing)   <u>505</u>

| | | |
|---|---|---|
| Are sexual abuse claims alleged? | ☐ Yes | ■ No |
| Does this case involve claims related to COVID-19? | ☐ Yes | ■ No |
| Is this a professional malpractice case? | ☐ Yes | ■ No |

    If "Yes," see N.J.S.A. 2A:53A-27 and applicable case law regarding your obligation to file an affidavit of merit.

| Related Cases Pending? | ☐ Yes | ■ No |
|---|---|---|

    If "Yes," list docket numbers

| Do you anticipate adding any parties (arising out of same transaction or occurrence)? | ☐ Yes | ■ No |
|---|---|---|
| Name of defendant's primary insurance company (if known) | ☐ None | ■ Unknown |

## The Information Provided on This Form Cannot be Introduced into Evidence.

Case Characteristics for Purposes of Determining if Case is Appropriate for Mediation

Do parties have a current, past or recurrent relationship?     ■ Yes     ☐ No

If "Yes," is that relationship:

☐ Employer/Employee     ☐ Friend/Neighbor     ☐ Familial     ■ Business

☐ Other (explain) _____

Does the statute governing this case provide for payment of fees by the losing party?     ■ Yes     ☐ No

Pursuant to R. 4:42-9

Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition.

Do you or your client need any disability accommodations?     ☐ Yes     ■ No
If yes, please identify the requested accommodation:

Will an interpreter be needed?     ☐ Yes     ■ No
If yes, for what language?

**I certify that confidential personal identifiers have been redacted from documents now submitted to the court and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).**

Attorney/Self-Represented Litigant Signature:          */s/ Steven J. Pudell*

# Civil Case Information Statement (CIS)

Use for initial pleadings (not motions) under *Rule* 4:5-1

## CASE TYPES

(Choose one and enter number of case type in appropriate space on page 1.)

**Track I - 150 days discovery**

| | |
|---|---|
| 151 | Name Change |
| 175 | Forfeiture |
| 302 | Tenancy |
| 399 | Real Property (other than Tenancy, Contract, Condemnation, Complex Commercial or Construction) |
| 502 | Book Account (debt collection matters only) |
| 505 | Other Insurance Claim (including declaratory judgment actions) |
| 506 | PIP Coverage |
| 510 | UM or UIM Claim (coverage issues only) |
| 511 | Action on Negotiable Instrument |
| 512 | Lemon Law |
| 801 | Summary Action |
| 802 | Open Public Records Act (summary action) |
| 804 | Election Law |
| 805 | Civil Commitment Expungement |
| 999 | Other (briefly describe nature of action) |

**Track II - 300 days discovery**

| | |
|---|---|
| 305 | Construction |
| 509 | Employment (other than Conscientious Employees Protection Act (CEPA) or Law Against Discrimination (LAD)) |
| 599 | Contract/Commercial Transaction |
| 603N | Auto Negligence – Personal Injury (non-verbal threshold) |
| 603Y | Auto Negligence – Personal Injury (verbal threshold) |
| 605 | Personal Injury |
| 610 | Auto Negligence – Property Damage |
| 621 | UM or UIM Claim (includes bodily injury) |
| 699 | Tort – Other |

**Track III - 450 days discovery**

| | |
|---|---|
| 005 | Civil Rights |
| 301 | Condemnation |
| 602 | Assault and Battery |
| 604 | Medical Malpractice |
| 606 | Product Liability |
| 607 | Professional Malpractice |
| 608 | Toxic Tort |
| 609 | Defamation |
| 616 | Whistleblower / Conscientious Employee Protection Act (CEPA) Cases |
| 617 | Inverse Condemnation |
| 618 | Law Against Discrimination (LAD) Cases |

**Track IV - Active Case Management by Individual Judge / 450 days discovery**

| | |
|---|---|
| 156 | Environmental/Environmental Coverage Litigation |
| 303 | Mt. Laurel |
| 508 | Complex Commercial |
| 513 | Complex Construction |
| 514 | Insurance Fraud |
| 620 | False Claims Act |
| 701 | Actions in Lieu of Prerogative Writs |
| 816 | Affordable Housing |

**Multicounty Litigation (Track IV)**

| | |
|---|---|
| 282 | Fosamax |
| 291 | Pelvic Mesh/Gynecare |
| 292 | Pelvic Mesh/Bard |
| 293 | DePuy ASR Hip Implant Litigation |
| 296 | Stryker Rejuvenate/ABG II Modular Hip Stem Components |
| 300 | Talc-Based Body Powders |
| 601 | Asbestos |
| 624 | Stryker LFIT CoCr V40 Femoral Heads |
| 626 | Abilify |
| 627 | Physiomesh Flexible Composite Mesh |
| 628 | Taxotere/Docetaxel |
| 629 | Zostavax |
| 630 | Proceed Mesh/Patch |
| 631 | Proton-Pump Inhibitors |
| 633 | Prolene Hernia System Mesh |
| 634 | Allergan Biocell Textured Breast Implants |
| 635 | Tasigna |
| 636 | Strattice Hernia Mesh |
| 637 | Singulair |
| 638 | Elmiron |
| 639 | Pinnacle Metal-on-Metal (MoM) Hip Implants |
| 640 | Bard Implanted Port Catheter Products |

If you believe this case requires a track other than that provided above, please indicate the reason on page 1, in the space under "Case Characteristics".

**Please check off each applicable category**

☐ **Putative Class Action**     ☐ **Title 59**     ☐ **Consumer Fraud**

☐ **Medical Debt Claim**

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-004290-25

**Case Caption:** ADVANCE AT HARRISON,  LLC  VS
GREENWICH INSURANCE

**Case Initiation Date:** 11/10/2025

**Attorney Name:** STEVEN JAY PUDELL

**Firm Name:** ANDERSON KILL PC

**Address:** ONE GATEWAY CENTER SUITE 1500
NEWARK NJ 07102

**Phone:** 9736425858

**Name of Party:** PLAINTIFF : Advance at Harrison, LLC

**Name of Defendant's Primary Insurance Company**
(if known): Unknown

**Case Type:** OTHER INSURANCE CLAIM (INCLUDING
DECLARATORY JUDGMENT ACTIONS)

**Document Type:** Complaint with Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same
transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19?** NO

**Are sexual abuse claims alleged by: Advance at Harrison, LLC?
NO**

**Are sexual abuse claims alleged by: Block D Partners Urban
Renewal? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual
management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
      **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
      **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO
**Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the
court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

11/10/2025                                        /s/ STEVEN JAY PUDELL
Dated                                             Signed

```
HUDSON COUNTY SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY      NJ 07306
                                      TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 748-4400
COURT HOURS  8:30 AM - 4:30 PM

                          DATE:   NOVEMBER 10, 2025
                          RE:     ADVANCE AT HARRISON, LLC  VS GREENWICH INSURANCE
                          DOCKET: HUD L -004290 25


    THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

    DISCOVERY IS   150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

    THE PRETRIAL JUDGE ASSIGNED IS:  HON KALIMAH H. AHMAD

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM      002
AT:  (201) 748-4400 EXT 60130.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                          ATTENTION:
                              ATT: STEVEN J. PUDELL
                              ANDERSON KILL PC
                              ONE GATEWAY CENTER
                              SUITE 1500
                              NEWARK           NJ 07102


ECOURTS
```

# State of New Jersey
### Department of Banking and Insurance
### Office of the Commissioner

**Philip D. Murphy**
*Governor*

**Tahesha L. Way**
*Lt. Governor*

PO Box 325
Trenton, NJ 08625-0325

Tel (609) 633-7667

**Justin Zimmerman**
*Commissioner*

**CERTIFIED MAIL
RETURN RECEIPT REQUESTED**

11/25/2025

Attention:  TONI ANN PERKINS
REGISTERED AGENT
GREENWICH INSURANCE COMPANY
10TH FLOOR    SUITE 1000
677 WASHINGTON BOULEVARD
STAMFORD, CT 06901

RE: Advance at Harrison, LLC; and Block D Partners Urban Renewal I,
LLC v. Greenwich Insurance Company and AXA XL Insurance
Company America
Superior Court of New Jersey, Hudson County Law Division
Docket No.:  HUD-L-004290-25

Dear Sir/Madam:

You are hereby notified that on this date the Commissioner of the New Jersey Department of
Banking and Insurance has accepted original service of process on your behalf in the above-
captioned matter.  The documents served are enclosed herein.

By copy of this letter I am advising the attorney for the Plaintiff(s) in this matter that these
documents have been transmitted to you, and confirming that the Commissioner of Banking
and Insurance is not authorized to receive service of any further documents in this action.

Very Truly Yours,

*MG/st*

**Margie Greco**
Administrative Assistant

C:  Anderson Kill P.C.
ATTN:  Steven J. Pudell, Esq.
One Gateway Center, Suite 1500
Newark, NJ 07102



*Visit us on the Web at dobi.nj.gov*
*New Jersey is an Equal Opportunity Employer*     *Printed on Recycled Paper and Recyclable*

## State of New Jersey
### Department of Banking and Insurance
### Office of the Commissioner
PO Box 325
Trenton, NJ 08625-0325

Tel (609) 633-7667

**Philip D. Murphy**
*Governor*

**Tahesha L. Way**
*Lt. Governor*

**Justin Zimmerman**
*Commissioner*

11/25/2025

***CERTIFIED MAIL***
***RETURN RECEIPT REQUESTED***

Attention:  TONI ANN PERKINS
AXA XL INSURANCE COMPANY AMERICAS
SUITE 1000, 10TH FLOOR
677 WASHINGTON BOULEVARD
STAMFORD, CT 06901

RE: Advance at Harrison, LLC; and Block D Partners Urban Renewal I,
     LLC v. AXA XL Insurance Company America and Greenwich
     Insurance Company
     Superior Court of New Jersey, Hudson County Law Division
     Docket No.:  HUD-L-004290-25

Dear Sir/Madam:

You are hereby notified that on this date the Commissioner of the New Jersey Department of Banking and Insurance has accepted original service of process on your behalf in the above-captioned matter.  The documents served are enclosed herein.

By copy of this letter I am advising the attorney for the Plaintiff(s) in this matter that these documents have been transmitted to you, and confirming that the Commissioner of Banking and Insurance is not authorized to receive service of any further documents in this action.

Very Truly Yours,

*MG/st*

**Margie Greco**
Administrative Assistant

C:   Anderson Kill P.C.
      ATTN:  Steven J. Pudell, Esq.
      One Gateway Center, Suite 1500
      Newark, NJ 07102

---

*Visit us on the Web at dobi.nj.gov*

*New Jersey is an Equal Opportunity Employer*     *Printed on Recycled Paper and Recyclable*